UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL ALLEN STAUB,<br><br>Plaintiff,<br>v.<br><br>ZIMMER, INC.,<br><br>Defendant. | CASE NO. C17-0508JLR<br><br>ORDER GRANTING MOTION TO DISMISS |

## I. INTRODUCTION

Before the court is Defendant Zimmer, Inc.'s ("Zimmer") Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. (Mot. (Dkt. # 10).) The court has considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS the motion to dismiss with leave to amend.

---

[1] No party has requested oral argument, and the court deems it unnecessary to the disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 1

## II. BACKGROUND

On December 30, 2016, Plaintiff Michael A. Staub filed a state court product liability action against Zimmer. (*See* Compl. (Dkt. # 3-1).) Mr. Staub alleges that he "underwent hip arthroplasty" on December 4, 2013. (*Id.* ¶ 3.) He further alleges that his surgeon implanted Zimmer's product, an "ML Taper," at the time of surgery. (*See id.* ¶ 4.) Mr. Staub contends that the ML Taper is "defective and unreasonably dangerous as defined by applicable Washington law" and that Zimmer has recalled the product. (*Id.* ¶¶ 5-6.) He also asserts that he "was required to undergo revision surgery" due to the defective nature of the ML Taper. (*Id.* ¶ 7.) Finally, Mr. Staub states that he suffered general and special damages "[a]s a direct and proximate result of the defective nature of [Zimmer's] product." (*Id.* ¶ 8.)

Zimmer removed the action to this court on April 3, 2017. (*See* Not. of Rem. (Dkt. # 1, as amended by Dkt. # 3)).) On April 4, 2017, Zimmer filed a motion to dismiss the action for failure to state a claim. (*See* Mot.) Zimmer noted its motion for the court's consideration on May 5, 2017. (*Id.* at 1.) Under the Local Rules for the Western District of Washington, Mr. Staub's opposition papers were due on Monday, May 1, 2017. *See* Local Rules W.D. Wash. CR 7(d)(3) ("Any opposition papers shall be filed and served not later than the Monday before the noting date."). Zimmer filed a reply memorandum on May 5, 2017, noting Mr. Staub's failure to timely respond to the motion to dismiss. (*See* Reply (Dkt. # 12)).) Later that day, Mr. Staub filed a response opposing Zimmer's motion to dismiss, but offering no excuse for his admitted lack of timeliness or his failure

//

to move for an extension of time.[2]  (*See* Resp. (Dkt. # 13) at 1 ("Plaintiff's counsel apologizes to the Court for his failure to timely respond to this Motion.  No excuse is offered, for whatever reason, the ECF email containing Defendant's Motion was overlooked.").)

### III.     ANALYSIS

**A.     Standard**

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court may dismiss a complaint as a matter of law if it lacks a cognizable legal theory or states insufficient facts under a cognizable legal theory.  *Balistreri v. Pacifica Police*

//

---

[2] The court will consider Mr. Staub's untimely response because there is no prejudice to Zimmer in this instance.  The court cautions Mr. Staub's counsel, however, to adhere to both the Federal Rules of Civil Procedure and the court's Local Rules in the future.  When a deadline has expired, the Federal Rule of Civil Procedure 6(b) requires the delinquent party to file a motion seeking an extension of the deadline and to demonstrate "excusable neglect."  *See* Fed. R. Civ. P. 6(b).  Counsel's failure to abide by this Rule in the future may lead the court to strike a delinquent filing.

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

The court need not accept as true a legal conclusion presented as a factual allegation. *Iqbal*, 556 U.S. at 678. Although Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

**B.     Washington Product Liability Act**

The Washington Product Liability Act ("WPLA"), RCW ch. 7.72, "created a single cause of action for product-related harms and supplants previously existing common law remedies, including common law actions for negligence." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1067 (Wash. 1993). Under the WPLA, "[a] product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). Further, "[a] product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW." RCW 7.72.030(2). Thus, to state a

claim under the WPLA, a plaintiff must plead non-conclusory allegations that plausibly support (1) a defective design claim; (2) a failure to warn claim; (3) a defective manufacture claim; or (4) a breach of express or implied warranty claim. RCW 7.72.030; *see* 16A David K. DeWolf & Keller W. Allen, *Wash. Prac., Tort L. & Prac.* § 17:8 (4th ed. 2013). A plaintiff need not commit at the outset to one of these specific theories of liability prior to conducting discovery. *See Braden v. Tornier, Inc.*, No. C09-5529RJB, 2009 WL 3188075, at *3 (W.D. Wash. Sept. 30, 2009). However, in order to survive a motion to dismiss the complaint must contain sufficient non-conclusory factual allegations to support at least one avenue of relief, *see Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) ("The problem with the allegation is that it simply tracks the general elements of strict products liability and contains no pertinent factual allegations."). The court now examines the adequacy of Mr. Staub's allegations as to each product liability claim.

### 1. Failure to Warn and Breach of Warranty

The complaint contains no allegations regarding either a failure to warn claim[3] or an express or implied breach of warranty claim. (*See generally* Compl.) The court "will not presume to raise a claim that plaintiff failed to allege." *Laisure-Radke v. Par Pharm., Inc.*, 426 F. Supp. 2d 1163, 1170 (W.D. Wash. 2006) (declining to read into a plaintiff's

//

---

[3] Additionally, unless Mr. Staub alleges that Zimmer failed to adequately warn the medical provider of the product's unsafe nature, such a claim may be precluded by the learned intermediary doctrine, because a medical device manufacturer's duty to warn generally flows to the medical practitioner, and not the end user. *See Taylor v. Intuitive Surgical, Inc.*, 389 P.3d 517, 524, 526 (Wash. 2017).

complaint under the WPLA a claim for breach of the implied warranty of merchantability when the plaintiff fails to allege such a claim); *see Lucas*, 726 F. Supp. 2d at 1156, n.1 ("As the Court reads the tenth cause of action, the Court sees only a claim for manufacturing and design defects. . . . If [the plaintiff] intends to allege a strict liability claim for inadequate warnings, . . . then he should amend the tenth cause of action to expressly include that claim.").

        2. <u>Design Defect Claim</u>

Under the WPLA, a design defect claim can be based upon either a "risk utility test" theory or a "consumer expectations test" theory. *See, e.g.*, *Kirkland v. Emhart Glass S.A.*, 805 F. Supp. 2d 1072, 1080 (W.D. Wash. 2011); *Falk v. Keene Corp.*, 782 P.2d 974, 980 (Wash. 1989). Under the risk utility test theory, the plaintiff may prevail by proving that, "at the time of manufacture, the likelihood that the product would cause the plaintiff's harm or similar harms, and the seriousness of those harms, outweighs the manufacturer's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative design would have on the product's usefulness." *Falk*, 782 P.2d at 980 (citing RCW 7.72.030(1)(a)). Alternatively, under the consumer expectations test theory, the plaintiff may prove the defendant's liability by showing the product was unsafe to an extent beyond that which the ordinary consumer would contemplate. *Id.* (citing RCW 7.72.030(3)).

Mr. Staub's risk utility test theory is based on the conclusory allegation that "Tornier designed, manufactured, marketed, and sold a product that was not reasonably safe." (*See* Compl. ¶ 9.) Mr. Staub fails to allege any design elements that led to the

alleged harm, facts indicating that there was a feasible alternative design element, or facts indicating that the burden of implementing the alternative design would not have outweighed the reduction in harm. (*See generally* Compl.)

In *Lucas*, the plaintiff alleged that Taser International, Inc.'s ("Taser") eponymous product "contained design and/or manufacture defects." *Lucas*, 726 F. Supp. 2d at 1155. Although the plaintiff's allegations "track[ed] the general elements of strict products liability," his claim "contain[ed] no pertinent factual allegations." *Id.* The court dismissed the cause of action without prejudice because it "contain[ed] no factual allegations that identify what aspect of the [product's] design and manufacture made it defective." *Id.* at 1155-56. Although *Lucas* applied the product liability law of California, the court based its dismissal was based upon the same procedural rule in this case—the pleading requirements of Rule 8(d). *Id.* at 1159.[4]

Mr. Staub's consumer expectation test theory likewise is based on a single conclusory allegation. (*See generally* Compl.) Specifically, Mr. Staub alleges that "Tornier designed, manufactured, marketed, and sold a product that . . . failed to meet consumer expectations of safety." (*Id.* ¶ 9.) Mr. Staub fails to allege how the product failed to meet a consumer's expectations of safety or what those expectations are. (*See generally id.*) Under the consumer expectations test, the court in *Lucas* held that

//

---

[4] In a case applying Washington law involving the same product and defendant as in *Lucas*, the court found the bare allegation that the defendant "defectively manufactured" the products to be conclusory. *Manjares v. Taser Int'l, Inc.*, No. CV-12-3086-LRS, 2012 WL 5389688, at *2 (E.D. Wash. Nov. 2, 2012).

the plaintiff "should describe *how* the [product] failed to meet the minimum safety expectations of an ordinary consumer." *Lucas*, 726 F. Supp. 2d at 1159 (quoting *Altman v. HO Sports Co., Inc.,* No. 1:09-CV-1000 AWI SMS, 2009 WL 4163512 at *8 (E.D. Cal. Nov. 23, 2009)). In *Altman* the court considered the plaintiff's allegation that the products in question "d[id] not meet consumer expectations" a bare legal conclusion and insufficient to meet the pleading requirements of Federal Rule of Civil Procedure 8. *Altman*, 2009 WL 4163512, at *8. Likewise, Mr. Staub's bare legal conclusion does not nudge his claim "across the line from conceivable to plausible." *See Iqbal*, 556 U.S. 662, 680.

        3. <u>Manufacturing Defect Claim</u>

A plaintiff may prevail on a manufacturing defect claim by proving that when a product left the control of the manufacturer the product deviated in some material way from the design specifications or performance standards of the manufacturer, or deviated in some material way from otherwise identical units of the same product line, or from ostensibly identical units of the same product line, and that the defects proximately caused the plaintiff's harm. RCW 7.72.030(2)(a). Mr. Staub has failed to identify or explain how the product deviated from the intended result or design, or from other seemingly identical models. (*See generally* Compl.) The complaint merely alleges that the product "was defective and unreasonably dangerous as defined by applicable Washington law."[5] (*Id.* ¶ 5.) Such conclusory allegations are insufficient under *Iqbal*.

---

[5] Mr. Staub also alleges that Zimmer "voluntarily recalled" the ML Taper, but fails to allege any connection between this recall and his alleged injuries. (*See* Compl. ¶ 6.)

556 U.S. 662, 680.  In a recent Washington case involving a product similar to the one at issue here, the court found such conclusory allegations insufficient to state a claim under the WPLA.  *See Force v. Wright. Med. Tech., Inc.*, No. C12-5687RBL, 2012 WL 4897165, at *2 (W.D. Wash. Oct. 15, 2012).  The *Force* court specifically cited as insufficient and conclusory allegations that certain hip devices "were defective in their manufacture and construction" or that the devices "were in a dangerous and defective condition."  *Id.*  The *Force* court, having disregarded the plaintiffs conclusory allegations, found that "[s]imply alleging that Defendants manufacture the product that failed in [Plaintiff's] left side does not create a plausible claim."  *Id.*

Here, Mr. Staub alleges little more than the plaintiff in *Force.*  (*See generally* Compl.)  "*Twombly* and *Iqbal* do not set a high bar, but they do require more" than Mr. Staub provides.  *See Force*, 2012 WL 4897165 at *2 (holding that where the complaint "fails to allege any specifics about the alleged defect, how the product deviated from requirements, what about it was dangerous, or what about the warnings were inadequate . . . , [p]laintiffs fail to properly plead their product liability claims").  Therefore, the court concludes that Mr. Staub fails to properly plead a manufacturing defect claim, and the court grants Zimmer's motion to dismiss.

**C.     Leave to Amend**

Even though Mr. Staub's complaint is inadequate, dismissal with prejudice is not the proper remedy.  If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal.  *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir.1983).  "Dismissal

without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). In determining whether dismissal without leave to amend is appropriate, courts also consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs have not exhibited undue delay or bad faith, Zimmer is at little risk of prejudice because discovery has yet to begin, and the court cannot say at this stage that amendment would be futile. *See Force*, 2012 WL 4897165, at *3.

## IV. CONCLUSION

The court GRANTS Zimmer's motion to dismiss (Dkt. # 10) and GRANTS Mr. Staub leave to amend his complaint. Mr. Staub's amended complaint, if any, must correct the deficiencies described herein and must be filed and served no later than twenty (20) days from the entry of this order. The court warns Mr. Staub that failure to timely file an amended complaint that adequately pleads his claims may result in the court dismissing his action with prejudice.

Dated this 9th day of June, 2017.

JAMES L. ROBART
United States District Judge